UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-41057
_____


LARRY STEWART,

                                        Plaintiff-Appellee,

                        versus

WAL-MART STORES, INC.,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court for the
Eastern District of Texas
(2:95-CV-94)
_____
July 3, 1997

Before WISDOM, BENAVIDES, and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:[*]

    This slip-and-fall case requires us to examine whether the
record contains substantial evidence from which the jury could
reasonably infer that Wal-Mart Stores, Inc. ("Wal-Mart") knew or
should have known of the dangerous condition that caused Larry
Stewart's injuries.  We also review the jury's award of past

_____

[*]     Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

medical expenses.

## I.

Larry Stewart filed this diversity suit in federal district court against Wal-Mart on a premises liability theory after he slipped and fell in a Wal-Mart store. The case was tried to a jury. After Stewart rested, Wal-Mart moved for a directed verdict on the ground that Stewart failed to show that Wal-Mart had actual or constructive knowledge of the dangerous condition that caused his injury. The district court denied Wal-Mart's motion. Wal-Mart did not call any witnesses.

The jury was instructed that Stewart had the burden of showing that Wal-Mart knew or should have known of the dangerous condition. The jury found that both Wal-Mart and Stewart were negligent and apportioned negligence 50 percent to Wal-Mart and 50 percent to Stewart. The jury awarded Stewart $75,000 for past medical expenses. Wal-Mart contends that the plaintiff adduced evidence at trial of only $64,827 in past medical expenses.

On August 19, 1996, the district court rendered judgment on the jury's verdict for $37,500. Wal-Mart timely filed a motion for judgment as a matter of law. In the alternative, Wal-Mart challenged the amount of the award by filing a motion to amend or modify the judgment. The district court denied both motions on October 9, 1996. This appeal followed.

## II.

Larry Stewart slipped and fell in a puddle of water at the Wal-Mart Supercenter in Longview, Texas on a Saturday afternoon.

He fell in the self-service cut flower and potted plant sales section near the entrance of the store. The fall knocked him unconscious for several minutes.

Morris Belt, an off-duty Texas state trooper, came to Stewart's aid. At trial, Officer Belt testified that he knelt at Stewart's side until the ambulance arrived. When Officer Belt got up, he noticed that the left knee of his blue jeans was soaked with water. He then saw that there was a "pretty good puddle of water" on the floor. The puddle "stemmed from the flowers to where Larry fell." When asked whether the water "appear[ed] to be coming from those cut flowers, that area," Officer Belt responded affirmatively. He also testified that "[t]here was some brown soily substance mixed in with the water," which "kind of filtered out to the edges where it appeared that it was running." According to Officer Belt, the water was flowing in a "three or four inch stream, you know, a solid stream coming, and then just little sprinkles coming off of that." On cross examination, he stated that he had not paid attention to whether the water was coming from cut flowers or a potted plant.

The jury also heard testimony from David Boozer, an area director (assistant manager) at the store. Boozer testified that although he saw a puddle of water where Stewart had fallen, he did not investigate the source of the water. He explained that "there was no need to investigate because it was a puddle of water and it could have come from several different places." According to

4

Boozer, Wal-Mart employees started watering the plants in that area at 3 a.m. daily.  (The store is open 24 hours a day).

Finally, Stewart presented deposition testimony from Jeff Waggoner, a Wal-Mart field manager.  Waggoner agreed that "the entrance area where the slip-and-fall occurred is one of the two highest traffic areas in the store."  He also agreed that "it was predictable that water would accumulate in that spot[1] in the store."  He added, "[w]e would have water in that area at some time, sure."

## III.

## DISCUSSION

## A.

Wal-Mart appeals the district court's denial of its Rule 50 motion for judgment as a matter of law.  *See* FED. R. CIV. P. 50.  In reviewing the denial of a motion for judgment as a matter of law, we use the same standard of review that guided the district court. *Crosthwait Equip. Co. v. John Deere Co.*, 992 F.2d 525, 528 (5th Cir.), *cert. denied*, 510 U.S. 991, 114 S. Ct. 549, 126 L.Ed.2d 451 (1993).  We consider all the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant.  A motion

---

[1]    Only designated portions of the deposition were read into the record.  It is not entirely clear that "that spot" refers to the precise place where Stewart fell, but it is a reasonable inference in support of the jury's verdict.  In fact, Wal-Mart appears to assume in its brief that Waggoner's testimony referred to that area.

for judgment as a matter of law is properly granted if the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable jurors could not arrive at a contrary verdict. *Id.* If the record contains substantial evidence opposing the motion, then the motion should have been denied. *Id.* (citing *Normand v. Research Inst. of Am., Inc.*, 927 F.2d 857, 859 (5th Cir. 1991)). Substantial evidence is "evidence of such quality and weight that reasonable and fairminded jurors in the exercise of impartial judgment might reach different conclusions." *Id.* (citation omitted).

This case was properly submitted to the jury as a dangerous condition premises liability case.[2] To establish a premises liability claim under Texas law, an invitee must show: (1) the occupier had actual or constructive knowledge of some condition on the premises; (2) the condition posed an unreasonable risk of harm to the invitee; (3) the occupier did not exercise reasonable care to reduce or to eliminate the risk; and (4) the occupier's failure to use such care proximately caused the invitee's injuries. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983); *see also Folks v. Kirby Forest Indus., Inc.*, 10 F.3d 1173, 1175-78 (5th Cir.

---

[2] This case was not, nor should it have been, submitted to the jury on a "negligent activity" theory. In Texas, recovery under a negligent activity theory "requires that the person have been injured by or as a contemporaneous result of the activity itself rather than the condition created by the activity." *Keech v. Kroger Co.,* 845 S.W.2d 262, 265-66 (Tex. 1992).

6

1994) (applying Texas premises liability law).  Wal-Mart disputes that the record contains substantial evidence that it had actual or constructive knowledge of the condition of which Stewart complains.[3]

Under Texas law, the jury may infer that the owner or occupier knew or should have known of a dangerous condition if there is evidence that the dangerous condition was created by the owner or occupier.  *See Keech*, 845 S.W.2d at 265-66; *Corbin*, 648 S.W.2d at 297; *Coffee v. F.W. Woolworth Co.*, 536 S.W.2d 539, 540 (Tex. 1976).[4]  Under this rule, the record in this case contains sufficient evidence from which the jury could reasonably infer that Wal-Mart knew or should have known of the dangerous condition.

The jury could have reasonably concluded that Wal-Mart created a dangerous condition by placing a display of plants and flowers near the store's entrance in one of the most highly trafficked

---

[3]     Wal-Mart does not argue that the puddle of water on the tile floor did not constitute a dangerous condition, nor does it contest any element other than actual or constructive knowledge.

[4]     Wal-Mart relies on *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996).  In *Motel 6*, the supreme court reaffirmed that the owner's or occupier's actual or constructive knowledge of a dangerous condition gives rise to a duty toward invitees.  *Id.*  The court of appeals found, and Motel 6 did not dispute in the supreme court, that Motel 6 neither knew nor should have known that the shower was unreasonably dangerous.  Accordingly, the supreme court held that Motel 6 had no duty to remove risks of which it was not nor should have been aware.  *Id.*  The court said nothing about the evidence necessary to show actual or constructive knowledge.  The court's decision in *Motel 6* is entirely consistent with previous Texas law, including *Corbin.*

areas of the store. Testimony from Wal-Mart managerial employees indicated that Wal-Mart managers made a conscious decision to place this display in a busy area near the entrance of the store to attract impulse buyers. Officer Belt's uncontradicted testimony established that the water on which Stewart slipped was flowing from a potted plant or cut flowers in Wal-Mart's display.[5] Boozer's testimony that Wal-Mart employees usually watered the plants at 3 a.m. does not alter the undisputed fact that the water on which Stewart slipped in fact came from Wal-Mart's own display. Stewart's evidence that Wal-Mart created the dangerous condition is sufficient to allow the jury to infer that Wal-Mart knew or should have known of the dangerous condition. *See Keech*, 845 S.W.2d at 265; *Coffee*, 536 S.W.2d at 540.

Aside from Texas's rule that the jury may infer actual or constructive knowledge from the creation of a dangerous condition, the jury's verdict is also supported by common sense. Wal-Mart should have known that plants, which must be watered, and cut flowers, which must be kept in water, will create slippery floors in the area where they are displayed.[6] Indeed, the record shows

---

[5] Boozer, the assistant manager at the scene, neglected to investigate the source of the water and did not contradict Officer Belt's testimony.

[6] Texas law does not require that Wal-Mart have known of the presence of this particular puddle. *Keech*, 845 S.W.2d at 265 ("Safeway did not have to know that a particular grape was on the floor at a particular time because it knew that the grapes would be on the floor due to the nature of the display.")(discussing *Corbin*,

8

that that is exactly what happened in this case. Finally, the jury's finding is also reinforced by some evidence, albeit slim, of actual knowledge: Waggoner, a Wal-Mart field manager, testified that it was predictable that water would accumulate in this area.[7]

Although we recognize that this appeal presents a close question, we are not convinced that the "facts and inferences point so strongly and overwhelmingly in favor of [Wal-Mart]" that a reasonable jury could not find that Wal-Mart knew or should have known of the dangerous condition. Thus, the district court properly denied Wal-Mart's motion for judgment as a matter of law.

B.

Wal-Mart next argues that the district court erred when it failed to grant Wal-Mart's motion to amend or modify the judgment. Wal-Mart claims that Stewart adduced evidence at trial of $64,827.09 in past medical expenses, yet the jury awarded $75,000. As Wal-Mart points out, counsel for plaintiff in closing argument asked for only $64,827.09.

---

648 S.W.2d at 296). By contrast, proof only of the presence of the puddle would be insufficient to allow the jury infer actual or constructive knowledge, absent evidence of the length of time the puddle remained on the floor. *Compare Rojas v. Wal-Mart Stores, Inc.*, 857 F. Supp. 533, 538 (N.D. Tex. 1994).

[7] Waggoner gave no indication that water would accumulate in this area because of the floral display. He was specifically questioned only about "water slickened or snow slickened floors."

Remittitur is the appropriate remedy for an excessive damage award, especially where the award does not appear to be the product of passion or prejudice and "the defects in the award are readily identifiable and measurable." *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 178 (5th Cir. 1992). The jury's award in this case does not appear to have been based on bias or prejudice, but instead appears to have been "merely excessive" based on the evidence Stewart proffered at trial. *See id.* (noting that "[d]amage awards which are merely excessive . . . are subject to remittitur . . ."). Moreover, the defect in the award is "readily identifiable and measurable." *Id.; Texarkana Mem. Hosp., Inc. d/b/a Wadley Reg. Med. Ctr. v. Murdock et al.*, No. 95-1073, 1997 WL 205982, at *5 (Tex., Apr 25, 1997), pet. for reh'g filed (May 12, 1997)("The award of past medical expenses is readily capable of measurement by a certain standard."). We construe Wal-Mart's motion to amend or alter the judgment as a motion for remittitur. This court generally reviews the denial of a motion for remittitur under an abuse of discretion standard. *Id.*

Stewart offered and the district court admitted into evidence Stewart's medical records, which reflect a total of $64,827.09 in past medical expenses. Stewart argues that in addition to the amounts reflected in these records, the record supports an additional award of $25,000-$30,000 for spinal fusion surgery, which Stewart underwent prior to trial. Stewart offered the

10

deposition testimony of Dr. Guy Danielson, the surgeon who performed the operation, that the reasonable cost of the surgery would be $25,000-$30,000. Although the surgery had not yet been performed at the time of Dr. Danielson's deposition, Stewart testified that he had undergone the fusion surgery before trial. Dr. Danielson also testified that the physical therapy associated with the surgery would cost between $3,500 and $5,000.

Although Stewart offered testimony that a range of charges would be reasonable, Stewart failed to offer testimony that the surgery was necessary. *Texarkana Mem. Hosp.*, 1997 WL 205982, at *4. Thus, the total necessary past medical expenses proven at trial fall short of the $75,000 awarded by the jury. Inasmuch as the evidence of past medical expenses would only support a finding of $64,827.09 and in view of the jury's comparative negligence findings, Stewart should be limited in this proceeding to the recovery of $32,413.54 rather than the $37,500 actually awarded. On the basis of this record, Stewart should be required to remit $5086.46.

Stewart also argues that even if the evidence adduced does not support the award of $75,000, the error was harmless because he presented evidence of other types of damages that were not awarded by the jury. He also appears to argue that because the discrepancy, if any, is not large, it does not affect Wal-Mart's substantial rights. These arguments are without merit.

11

IV.

For these reasons, we AFFIRM the district court's denial of Wal-Mart's motion for judgment as a matter of law. We REVERSE the district court's denial of Wal-Mart's motion to amend or alter the judgment, and we direct the district court to grant a remittitur of $5086.46. If the plaintiff refuses to remit this amount, we order a new trial as to damages for past medical expenses only.