# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 1, 2021

Lyle W. Cayce
Clerk

No. 20-20528

MTGLQ Investors, L.P.,

*Plaintiff—Appellee*,

*versus*

Tina Alexander,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-616

Before Higginbotham, Stewart, and Wilson, *Circuit Judges*.
Per Curiam:[*]

MTGLQ Investors, L.P. and its predecessors in interest have been attempting to foreclose on Tina Alexander's home for fourteen years. In response, Alexander has resorted to serial litigation, often interposed on the eve of foreclosure. The present appeal marks the parties' third appearance in this court. In this latest round, MTGLQ filed suit to recover the unpaid

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-20528

loan amounts, including its costs, expenses, and attorneys' fees.  In response, Alexander raised affirmative defenses of quasi- and equitable estoppel.  The district court granted MTGLQ summary judgment on Alexander's affirmative defenses and, ultimately, on its judicial foreclosure claim.

We affirm the district court.  It is well past time for Alexander to pay the piper.

## I.

## A.

A brief recounting of the litigation preceding this action provides a bit of context.  In the parties' first go-round in federal court, Alexander, proceeding *pro se*, filed a complaint against MTGLQ's predecessor-in-interest,[1] seeking, *inter alia*, a temporary restraining order in an attempt to fend off a foreclosure order that MTGLQ obtained in Texas state court.  *See Alexander v. Wells Fargo Bank, N.A.*, No. H-15-1596, 2016 WL 2770547, at *6–7 (S.D. Tex. May 12, 2016).  Ultimately, that action was dismissed without prejudice after Alexander filed a motion to dismiss "based upon the inducement of the Notice of Recission."  *Id.* at *7.

Alexander, again *pro se*, filed a second complaint about a year later in state court, alleging violations of the Texas Constitution, breach of contract, negligent misrepresentation, and breach of the duty of good faith and fair dealing.  Alexander filed suit after MTGLQ obtained another foreclosure

---

[1] The loan assignee has changed over the duration of this litigation.  The original named plaintiff in this case was Wells Fargo Bank, N.A., also known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A., and formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB.  Wells Fargo later filed an unopposed motion to substitute MTGLQ, the loan's current assignee, as the proper party, which the district court granted.  For simplicity's sake, we refer to the various lenders as "MTGLQ."

order, actually its third against Alexander. *Id.* After removal to federal court, MTGLQ moved to dismiss Alexander's complaint for failure to state a claim. *See id.* at *7-8. The district court granted MTGLQ's motion and dismissed Alexander's claims with prejudice. *See id.* at *8–16.

Alexander appealed, challenging the dismissal of two of her claims in that action: (1) her request for a permanent injunction preventing the foreclosure sale and (2) forfeiture under the Texas Constitution. *See Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 598 (5th Cir. 2017). This court held that Alexander had sufficiently pled a quiet title claim for injunction under the Texas Constitution and reversed as to that claim, but we affirmed the district court's dismissal of her forfeiture claim. *Id.* at 602–03. On remand, the parties filed cross-motions for summary judgment on Alexander's remaining claim. *See Alexander v. Wells Fargo Bank, N.A.*, No. H-15-1596, 2017 WL 6375806 (S.D. Tex. Dec. 12, 2017). The district court granted summary judgment to MTGLQ. *Id.* at *3–4. Alexander again appealed, and this court affirmed, noting that "Alexander has had ample opportunity to litigate her meritless claim." *Alexander v. Wells Fargo Bank, N.A.*, 740 F. App'x 447, 448 (5th Cir. 2018).

## B.

But testing the old proverb that "opportunity knocks but once," Alexander again resists foreclosure. When MTGLQ most recently sued her, asserting a claim for judicial foreclosure, Alexander interposed affirmative defenses of quasi-estoppel and equitable estoppel. The district court concluded that her defenses failed as a matter of law. Alexander now appeals both that conclusion and the resulting summary judgment in favor of MTGLQ on its judicial foreclosure claim. Before discussing these issues, we sketch some additional pertinent background.

In 1998, Alexander obtained a thirty-year home equity loan in the amount of $296,000.00 from MTGLQ to purchase property in Houston, Texas. In return, Alexander executed a note, promising to repay the principal she borrowed plus accrued interest. Payments were to be made at the beginning of each month.

The parties secured the note with a deed of trust. The deed of trust reiterated Alexander's promise to repay principal, interest, and any late charges due under the promissory note and obligated Alexander to pay taxes and hazard insurance premiums on the property. In the event of breach, the deed of trust authorized MTGLQ to accelerate the indebtedness provided by the note and demand immediate payment of all sums secured. It further permitted MTGLQ to advance delinquent property taxes, insurance premiums, and other assessments, which the lender reflected in an escrow account.

Alexander fell into default on her loan in September 2005. By September 2007, Alexander was forty-three months behind in making payments. As a result, MTGLQ sent Alexander a notice of acceleration and a reinstatement quote, which demanded that Alexander pay $105,440.15 by September 25, 2007, to reinstate her loan. The reinstatement balance itemization did not disclose that anything was owed for escrow advances but warned that the "quote may or may not include advances for insurance, property taxes and other assessments." The reinstatement quote also reminded Alexander that if MTGLQ "advanced delinquent property taxes, hazard/flood insurance, or other assessments," she "may be required to make payment into an escrow account with [MTGLQ]."

On September 28, Alexander tendered $106,000.00 to MTGLQ, which MTGLQ then acknowledged was "received and processed." And on October 12, Alexander paid a monthly mortgage payment of $2,561.12.

Shortly thereafter, she received an annual disclosure statement from MTGLQ that indicated her account reflected an escrow shortage of $79,779.10. MTGLQ provided Alexander three options for repaying the shortage: lump sum payment in full, partial lump sum payment followed by monthly payments for the balance, or monthly payments of the balance spread over the coming year. Alexander did not make any immediate payment, so her monthly mortgage payments increased from $2,561.12 to $8,768.85, effective December 1, 2007. Alexander attempted to pay $2,120.59—what she believed she owed following the reinstatement of her loan—in November and December 2007, but according to Alexander, the lender refused to accept either payment. Alexander failed to make the increased payments.

Over the next several years, the parties engaged in litigation in both state and federal court over who owed what, to whom.[2] By the beginning of 2019, while Alexander's second appeal to this court was pending, the lender again notified Alexander that she was in default and warned that if the default was not cured, MTGLQ would accelerate the loan. Alexander did not cure the default, and on January 31, 2019, MTGLQ accelerated the debt. On February 21, 2019, MTGLQ filed a judicial-foreclosure suit against Alexander in the Southern District of Texas, alleging three Texas state law claims. Alexander answered the complaint, raising quasi- and equitable estoppel as affirmative defenses.

After discovery, MTGLQ moved for summary judgment, asserting that it was entitled to recover the unpaid amounts due under the note and the deed of trust, including costs and expenses advanced to enforce the security

---

[2] For a more detailed account of the parties' extensive litigation history, *see Alexander v. Wells Fargo Bank, N.A.*, No. H-15-1596, 2016 WL 2770547, at *1–7 (S.D. Tex. May 12, 2016).

No. 20-20528

instruments, and attorneys' fees.  In response, Alexander, represented by counsel, argued that quasi-estoppel and equitable estoppel precluded MTGLQ from recovering unpaid amounts beyond the reinstatement payment she tendered in September 2007 and the remaining balance of principal and interest due thereafter.  At an August 2020 hearing, the district court verbally granted MTGLQ summary judgment on Alexander's affirmative defenses.[3]  The district court then formalized its ruling in a final judgment, granting summary judgment in favor of MTGLQ on both Alexander's estoppel defenses and the merits of MTGLQ's judicial foreclosure claim.[4]  Alexander appealed.

## II.

We review summary judgment de novo.  *Patel v. Texas Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2020) (citation omitted).  In the usual case, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fᴇᴅ. R. Cɪᴠ. P. 56(a).  Here, Alexander does not challenge MTGLQ's allegations concerning its judicial foreclosure claim.  Instead, she contends that her two affirmative defenses—quasi- and equitable estoppel—preclude MTGLQ from foreclosing on her home.  When a nonmovant solely counters a motion for summary judgment with an affirmative defense, the movant "should be able to obtain summary judgment simply by disproving the existence of any essential element of the [nonmovant's] affirmative

---

[3] In its summary judgment reply brief, MTGLQ urged the district court to bar Alexander's estoppel defenses under the doctrine of *res judicata*.  At the hearing, the district court rejected this argument and instead concluded that Alexander's defenses failed as a matter of law.  The parties do not dispute the district court's *res judicata* ruling on appeal.

[4] Before final judgment, the parties stipulated to dismiss MTGLQ's other two state law claims.

defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *accord Deutsche Bank Nat. Trust Co. v. Stockdick Land Co.*, 367 S.W.3d 308, 318 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

### III.

Alexander asserts that MTGLQ is estopped from recovering amounts beyond the reinstatement balance she paid and remaining unpaid principal and interest on her loan. She contends there are genuine issues of material fact stemming from her quasi-estoppel and equitable estoppel defenses. We review each defense in turn.

### A.

First, to support her quasi-estoppel defense, Alexander contends: "[MTGLQ] acknowledged and accepted the [reinstatement] payment, which reinstated the loan—the bank sent her a refund for the overpayment. They cannot now complain that the loan was never reinstated. Their benefit was $106,000. Their burden was reinstating the loan. They accepted the benefit but disclaimed the burden." Boiled down, Alexander asserts that quasi-estoppel forbids MTGLQ from accepting the benefit of her reinstatement payment and then subsequently demanding additional payments for the escrow advances MTGLQ made on Alexander's behalf. To Alexander, MTGLQ's acceptance of her September 2007 reinstatement payment cleared her prior obligations and balances—including escrow amounts due and MTGLQ's costs and expenses—under the loan. We disagree.

Under Texas law, "[q]uasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 337 (Tex. 2020); *see also Lopez v. Munoz, Hockema &*

*Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). Quasi-estoppel applies "when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 778 (Tex. 2017). Quasi-estoppel, unlike equitable estoppel, "requires no showing of misrepresentation or detrimental reliance." *Hartford Fire Ins. Co. v. City of Mont Belvieu*, 611 F.3d 289, 298 (5th Cir. 2010) (quoting *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. App.—Corpus Christie 1994, writ denied)).

To support her contention, Alexander points to *Texas Capital Bank, N.A. v. Zeidman*, 779 F. App'x 211 (5th Cir. 2019), and *Lindley v. McKnight*, 349 S.W.3d 113 (Tex. App.—Fort Worth 2011, no pet.). In *Zeidman*, the defendant verbally agreed with the lender to pay a lump sum amount in exchange for a release of liability under his personal guaranty. 779 F. App'x at 213. The lender accepted the payment but later sued the defendant for breach of the guaranty after the defendant's co-borrower defaulted on the loan. *Id.* In weighing the defendant's quasi-estoppel defense, this court determined that the lender received a benefit at the time the defendant tendered the lump sum because the underlying loan was not in default, and "[the defendant] was under no immediate—or even certain future—obligation to pay [the lender] anything." *Id.* at 215.

In *Lindley*, the decedent's estate utilized two corporations' shareholder agreements to redeem payments for shares the decedent held in each corporation. 349 S.W.3d at 132. After the corporations tendered payment to the estate, the executor sued the corporations, contending that the corporations' shareholder agreements were unreasonable and void. *Id.* In determining that the executor was estopped from pursuing the claim, the Texas Court of Appeals held that "it would be unconscionable to allow [the

decedent's] estate to retain the benefit it received for the redemption of [the decedent's] shares while it concurrently challenge[d] the provisions of the shareholders' agreements that made the redemptions possible." *Id.* at 132.

*Zeidman* and *Lindley* are easily distinguishable. In *Zeidman*, the defendant was not in default at the time he made a lump sum payment to the lender in exchange for a release of liability under his guaranty. 779 F. App'x at 215. Thus, he conferred a benefit on the lender, which the lender accepted, in exchange for being released from an otherwise enforceable guaranty. By contrast, Alexander concedes that she had been in default for almost four years by the time she tendered $106,000.00 to MTGLQ to reinstate her loan. *Cf. id.* ("Of course, it is true that, in the event of a default on the underlying loan, [the defendant] would have been bound under the Guaranty to repay the entire balance due[.]"). She makes no showing that the reinstatement amount she paid MTGLQ was not already owed, such that she conferred no benefit on her lender other than the benefit of the bargain the parties entered via the note and deed of trust.

Similarly, in *Lindley*, the court deemed the executor's suit unconscionable because the executor sought to challenge the enforceability of the very agreements that facilitated the payments the estate had previously accepted. 349 S.W.3d at 132. The executor was estopped, basically, from invoking the agreements to redeem the decedent's corporate shares and then contending that the same agreements were void. Conversely, Alexander fails to show that MTGLQ has ever "assert[ed], to [her] disadvantage, a right inconsistent with a position previously taken." *Teal Trading & Dev.*, 593 S.W.3d at 337. To the contrary, Alexander fails to show any inconsistency between MTGLQ's position as to amounts she owes pursuant to the note and deed of trust and what those agreements *expressly allow* MTGLQ to collect. The fact that she paid the September 2007 reinstatement amount is

No. 20-20528

of no moment to MTGLQ's rights to demand further repayment of advances for taxes, insurance or other assessments, or to remedy subsequent defaults on the loan.

*Comiskey v. FH Partners, LLC*, 373 S.W.3d 620 (Tex. App.—Houston [14th Dist.] 2012, pet. denied), cited by MTGLQ, is instructive. There, the lender foreclosed on one borrower's property when a co-borrower defaulted, using a cross-collateralization clause within the loan agreement executed by the two borrowers. *Comiskey*, 373 S.W.3d at 629. Resisting foreclosure, the borrower raised quasi-estoppel as a defense, contending that the lender could not accept monthly payments but then also employ the cross-collateralization clause and refuse acceptance of his final payment. *Id.* at 638. The Texas appellate court disagreed and concluded that the lender's acceptance of the borrower's monthly payments did not satisfy quasi-estoppel because the lender was "entitled under the contract" to collect payments and also enforce the cross-collateralization clause. *Id.* at 639.

Analogously, MTGLQ was contractually entitled to collect Alexander's reinstatement payment after Alexander defaulted on her loan. And under the terms of the loan agreements—indeed, as the very reinstatement notice and other documents provided to Alexander expressly state—MTGLQ was further entitled to demand payments for additional expenses it had advanced on Alexander's behalf. *See id.*; *see also Welch v. Wells Fargo Bank, N.A.*, No. H-12-1468, 2012 WL 13047695, at *7 (S.D. Tex. Dec. 17, 2012) ("[A]ccepting a benefit to which one is already entitled under the agreement does not satisfy quasi-estoppel." (citation omitted)). Simply put, Alexander makes no showing that she did not owe the amounts MTGLQ said were due. Her quasi-estoppel defense fails.

**B.**

Alexander's equitable estoppel defense fails for similar reasons. "Under the doctrine of equitable estoppel, a party is precluded, due to its voluntary conduct, from asserting rights it might otherwise possess against another person who has relied on the party's conduct to change his position for the worse." *Comiskey*, 373 S.W.3d at 637 (citation omitted). Applying Texas law, equitable estoppel requires evidence of

> (1) a false representation or concealment of material facts, (2) made with actual or constructive knowledge of those facts, (3) with the intention that it should be acted on, (4) to a party without knowledge, or the means of knowledge, of those facts, (5) who detrimentally relied upon the misrepresentation.

*Id.* (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998)).

Alexander asserts that MTGLQ misrepresented facts regarding the arrearage in her escrow account. She contends that the allegedly inaccurate account statements that closely followed her reinstatement payment manifest MTGLQ's misrepresentations. Alexander further asserts that she would not have paid $106,000.00 to MTGLQ had she been privy to "the real facts." Finally, she states that she relied on MTGLQ's misrepresentations to her detriment. Again, we disagree that Alexander has established an equitable estoppel defense to MTGLQ's foreclosure claim.

Simply put, Alexander acknowledges she owes MTGLQ for unpaid principal, interest, and escrowed amounts for insurance and taxes. Because Alexander fell into default, MTGLQ was entitled under the terms of the unambiguous agreements to recover the unpaid amounts, including principal, interest, and advances. While MTGLQ's serial notices in the fall of 2007 to Alexander of the amounts due could perhaps have been clearer,

we see no competent evidence that demonstrates any false representation or concealed material fact on the part of MTGLQ.  Even assuming she could substantiate the other elements of an equitable estoppel defense (e.g., that she lacked the knowledge of, or the means to know, the "true facts" regarding what she owed), her defense fails for this threshold reason, and the district court properly entered summary judgment for MTGLQ.

AFFIRMED.